SILBERMAN, Chief Judge.
Dwight Vincent Yarn appeals his convictions and sentences for (1) robbery with a firearm, (2) aggravated battery on a law enforcement officer with a deadly weapon, (3) battery on a police dog, (4) possession of a firearm by a convicted felon, (5) second-degree fleeing or attempting to elude a law enforcement officer, and (6) trafficking in phenethylamines (MDMA). Yarn challenges the denial of his motion for judgment of acquittal on counts two and three and the denial of his motion to suppress. We affirm without further discussion the trial court’s denial of the motion to suppress. With respect to the denial of the motion for judgment of acquittal, we affirm as to the charge of aggravated battery on a law enforcement officer with a deadly weapon. Because the trial court should have granted the motion for judgment of acquittal on the charge of battery on a police dog, we reverse Yarn’s conviction and sentence for that offense. Otherwise, we affirm Yarn’s convictions and sentences.
Yarn contends that the trial court should have granted his motion for judgment of acquittal for the offenses of aggravated battery on a law enforcement officer with a deadly weapon and battery on a police dog because the State failed to prove Yarn’s specific intent. The State presented evidence that Yarn used his vehicle to ram Deputy Wolfinger’s police vehicle, a Chevy Tahoe K-9 unit. The State charged Yarn with battery on a police dog because the deputy’s dog, Rex, was in the Tahoe and was thrown inside his cage.
The State presented evidence that after a robbery Yarn fled from officers in a gold Toyota Camry and drove down a dead-end street where Deputy Wolfinger blocked in the Camry with his Tahoe. At the dead end the Camry turned into a vacant lot and made a U-turn. Just before the Camry got back on the road, it rapidly accelerated and struck the Tahoe head-on. Deputy Wolfinger was thrown against the steering wheel, and Rex was bounced off the wall of his cage. Yarn tried to push his way out by ramming the Tahoe. When Yarn hit Deputy Wolfinger’s Tahoe, Yarn *41 was still attempting to accelerate and to push the Tahoe out of the way.
Yarn testified that he did not intend to hit the deputy’s vehicle. Rather, he was trying to turn around when another deputy came “out of nowhere” and the two collided. Yarn also testified that he did not know there was a dog inside the Tahoe.
With respect to the aggravated battery on Deputy Wolfinger, the trial court properly denied the motion for judgment of acquittal because the State presented sufficient evidence of Yarn’s intent to strike the deputy based on Yarn’s actions in ramming the Tahoe. A simple battery occurs when the defendant “[a]ctually and intentionally touches or strikes another person against the will of the other.” § 784.03(l)(a)(l), Fla. Stat. (2009). The battery becomes an aggravated battery when the defendant uses a deadly weapon, such as a motor vehicle. See § 784.045(1)(a)(2); Beard v. State, 842 So.2d 174, 175-76 (Fla. 2d DCA 2003). Intent is a required element of battery, and proof of intent is usually determined by the surrounding circumstances. Beard, 842 So.2d at 176; see also Miller v. State, 636 So.2d 144, 150 (Fla. 1st DCA 1994) (stating that battery on a law enforcement officer is a specific intent crime). And “to prove the offense of aggravated battery arising out of the defendant’s ramming of another vehicle, it is necessary for the State to show that the occupants of the rammed vehicle were at least jostled or moved about within their vehicle.” V.A. v. State, 819 So.2d 847, 849 (Fla. 3d DCA 2002).
Yarn argues that he did not intend to hit the deputy’s vehicle and that he was only trying to escape. However, the State’s evidence here was inconsistent with Yarn’s testimony that he did not intend to collide with the Tahoe. Although Yarn may have been attempting to escape, his method of escape was to intentionally ram the Tahoe to attempt to push it out of the way. Further, Yarn did not suggest that he was unaware that a law enforcement officer was in the Tahoe. In fact, he claimed that the vehicle just “came out of nowhere”; thus, he knew that someone was driving the police vehicle. Therefore, the trial court was correct to deny the motion for judgment of acquittal on the ground that the State failed to prove Yarn’s intent to commit battery on the deputy.
With respect to the charge of battery on a police dog, we agree with Yam that the trial court should have granted his motion for judgment of acquittal because the State failed to present evidence of Yarn’s intent to commit a battery on the dog. Section 843.19(3), Florida Statutes (2009), provides that “[a]ny person who actually and intentionally maliciously touches, strikes, or causes bodily harm to a police dog” commits a first-degree misdemeanor. Thus, the State had to prove that Yarn intentionally struck or caused harm to the police dog.
To prove that Yarn intended to strike or harm the dog, it would be necessary to prove that Yarn knew a police dog was in Deputy Wolfinger’s Tahoe. Yarn testified that he did not know there was a dog in the Tahoe he struck. He further testified that he did not pay attention to any markings on the vehicle and that he could not even see markings because all he could see were “lights flashing everywhere.” He knew the vehicles were patrol cars, but he did not know what was in the vehicle he hit.
The- State’s evidence showed that Yarn caused a head-on collision with the Tahoe. Deputy Wolfinger testified that his Chevy Tahoe had “ “warning police K-9’ on the side windows and back and rear window.” *42 But there is no evidence that Yarn ever saw the side or back of Deputy Wolfinger’s Tahoe. Rather, Yarn hit the Tahoe head on, and there was no evidence that there were K-9 markings on the front. Yarn’s testimony that he did not see any markings on the Tahoe because there were lights flashing everywhere is consistent with the State’s evidence that the deputies’ vehicles had their lights flashing. Based on the evidence presented, the State failed to prove that Yarn knew that there was a police dog in the vehicle he struck and that he intended to strike or cause harm to the police dog.
Therefore, because the State failed to prove Yarn’s intent to harm a police dog, the trial court should have granted Yarn’s motion for judgment of acquittal on count three. We reverse Yarn’s conviction and sentence for the misdemeanor of battery on a police dog. We recognize that this will provide little actual relief to Yarn because he has already served the sentence for this offense and he is serving a life sentence on the robbery with a firearm conviction.
Affirmed in part and reversed in part.
WALLACE and BLACK, JJ„ Concur.